IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

AMY SMITH,                         )
                                   )
            Plaintiff,             )
                                   )
      v.                           )      1:12CV1247
                                   )
CAROLYN W. COLVIN,                 )
Acting Commissioner of Social      )
Security,                          )
                                   )
            Defendant.             )


**MEMORANDUM OPINION AND ORDER**

**OSTEEN, JR., District Judge**

Plaintiff Amy Smith ("Plaintiff") initiated this action
pursuant to Section 205(g) of the Social Security Act (the
"Act"), as amended and codified at 42 U.S.C. § 405(g), to obtain
judicial review of a final decision of the Commissioner of
Social Security ("Commissioner"), denying her claim for Social
Security Disability Insurance benefits under Title II of the Act
("SSDI") and Supplemental Security Income benefits under Title
XVI of the Act ("SSI").

Plaintiff subsequently filed a Motion for Judgment on the
Pleadings pursuant to Rule 12(c) of the Federal Rules of Civil
Procedure (Doc. 8), and the Commissioner has filed its own
Motion for Judgment on the Pleadings (Doc. 12). Additionally,

the administrative record has been certified to this court for review.[1]

For the reasons set forth below, the Commissioner's motion will be granted, Plaintiff's motion will be denied, and this case will be dismissed.

I.    BACKGROUND

Plaintiff filed an application for SSDI and SSI benefits on May 15, 2006, alleging a disability beginning on July 31, 2002. The claims were denied initially and upon reconsideration. After a hearing in front of an Administrative Law Judge ("ALJ") in April 2009 (Tr. at 64-101), the ALJ issued a partially favorable decision for Plaintiff granting her application for SSI benefits after finding that Plaintiff was disabled as of November 26, 2008.[2]  (Id. at 111.)

Despite this partially favorable decision, Plaintiff filed an appeal with the Appeals Council.  On appeal, the Appeals Council vacated the entire decision, including those parts favorable to Plaintiff. (Id. at 125.) Among other things, the

_____

[1] Transcript citations refer to the Administrative Transcript of Record filed manually with the Commissioner's Answer.  (Doc. 6.)

[2] The ALJ denied Plaintiff's request for SSDI benefits because Plaintiff was not disabled before her "date last insured" - June 30, 2005.  (See Tr. at 102, 118.)

-2-

Appeals Council found that the medical evidence did not show November 26, 2008 to be "medically significant." (Id. at 126.) The Appeals Council remanded for further consideration, specifically ordering that the ALJ:

> Further develop the medical record. In doing so, obtain additional evidence including, if warranted and available, consultative examinations and medical source statements about what the claimant can still do despite the impairments. If necessary, obtain evidence from a medical expert to clarify the date of onset (20 CFR 404.1527(f) and 416.927(f) and Social Security Ruling 83-20).

(Id.)

A second hearing was held on December 16, 2010 (Id. at 28-63), and, in a decision dated January 25, 2011, the ALJ denied Plaintiff's application.[3] (Id. at 10.) The ALJ found that Plaintiff had the following severe impairments: Townes-Brock syndrome; right rotator cuff tendonitis; hearing loss; poor vision; depression; anxiety; post-traumatic stress disorder

---

[3] "The Commissioner uses a five-step process to evaluate disability claims." Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012) (citing 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4)). "Under this process, the Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to his past relevant work; and (5) if not, could perform any other work in the national economy." Id. A finding adverse to the claimant at any of several points in this five-step sequence forecloses a disability designation and ends the inquiry.

(PTSD); and cannabis abuse.  (Id. at 12.)  The ALJ also found

that her impairments, alone or in combination, did not meet or

equal a listed impairment in 20 C.F.R. pt. 404, subpt. P,

app. 1. (Id. at 13.)

The ALJ determined that Plaintiff had the Residual

Functional Capacity ("RFC")[4] to perform sedentary work, except as

follows:

> [Plaintiff] can perform fingering and handling with
> her right hand on a frequent basis only, and can do no
> overhead reaching with her right upper extremity.
> [Plaintiff] is precluded from working in noisy
> environments, from using a telephone, and can only
> frequently use near and far visual acuity.  In
> addition, [Plaintiff] is precluded from balancing or
> climbing, is limited to only occasional stooping,
> crouching, kneeling, and crawling, and cannot work at
> heights or around dangerous machinery.  [Plaintiff] is
> also limited to work involving only simple, routine,
> repetitive tasks, and can have only occasional
> interaction with co-workers and supervisors.  Further,
> [Plaintiff] is unable to work at a production rate.

(Id. at 14.)

In finding that Plaintiff could perform sedentary work

(with the exceptions listed above), the ALJ determined that

---

[4] "RFC is a measurement of the most a claimant can do
despite [the claimant's] limitations." Hines v. Barnhart, 453
F.3d 559, 562 (4th Cir. 2006)(noting that administrative
regulations require RFC to reflect claimant's "ability to do
sustained work-related physical and mental activities in a work
setting on a regular and continuing basis . . . [which] means 8
hours a day, for 5 days a week, or an equivalent work schedule"
(internal emphasis and quotation marks omitted)).

-4-

Plaintiff could sit for 6 hours and walk or stand for 2 hours in an 8-hour work day, as well as lift and carry up to 10 pounds occasionally and 5 pounds frequently. (Id. (citing 20 C.F.R. § 416.967(a) (providing the definition of "sedentary work" in SSI cases)).) This determination on remand differs from the one made in the original hearing. There, the ALJ determined that Plaintiff's RFC made it so Plaintiff could not perform "the full range of sedentary work." (Id. at 116.) The difference appears to be that the ALJ in the original hearing relied on the "Physical Residual Functional Capacity Questionnaire" completed by Dr. Cynthia Powell in assessing Plaintiff's RFC. (Id.) But after the Appeals Council found that Dr. Powell's opinion was "conclusory and not supported by treatment records or medical evidence" (id. at 125), the ALJ on remand accorded Dr. Powell's opinion "little weight," particularly "as she only treated the claimant on two separate occasions." (Id. at 19.)

Having determined Plaintiff's RFC, the ALJ found that Plaintiff was unable to perform any past relevant work, but considering Plaintiff's age, education, work experience, and RFC, there were other jobs that existed in significant numbers in the national economy that she was able to perform, such as surveillance system monitor and document scanner. (Id. at 20-

-5-

21.)  Thus, the ALJ found that Plaintiff was not disabled.  (Id. at 22.)

After unsuccessfully seeking review by the Appeals Council, Plaintiff filed the present action on November 20, 2012.  (Doc. 2.)  The parties then each filed a motion for judgment on the pleadings (Docs. 8, 12), and this issue is now ripe for adjudication.

## II.  LEGAL STANDARD

Federal law authorizes judicial review of the Social Security Commissioner's denial of social security benefits. 42 U.S.C. § 405(g); Hines, 453 F.3d at 561.[4]  However, the scope of review of such a decision is "extremely limited."  Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981).  "The courts are not to try the case de novo."  Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974).  Instead, "a reviewing court must uphold the factual findings of the ALJ if they are supported by substantial evidence and were reached through application of the correct

---

[4] Plaintiff applied for and was denied both SSDI benefits under Title II of the Act and SSI benefits under Title XVI of the Act.  However, "[t]he statutory definitions and the regulations promulgated by the [Commissioner] for determining disability, see 20 C.F.R. pt. 404 (SSDI); 20 C.F.R. pt. 416 (SSI), governing these two programs are, in all aspects relevant here, substantively identical."  Craig v. Chater, 76 F.3d 585, 589 n.1 (4th Cir. 1996).

-6-

legal standard." Hancock, 667 F.3d at 472 (internal quotation omitted).

"Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1993) (quoting Richardson v. Perales, 402 U.S. 389, 390 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (internal citations and quotation marks omitted). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the court should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." Hancock, 667 F.3d at 472. Nonetheless, this court must ascertain whether the ALJ "has analyzed all evidence and

-7-

sufficiently explained the weight given to obviously probative evidence."  See Sterling Smokeless Coal Co. v. Akers, 131 F.3d 438, 439-40 (4th Cir. 1997).

## III. **ANALYSIS**

Plaintiff makes two arguments in an attempt to challenge the ALJ's determination that she was not disabled, as defined by the Act, during any relevant time period between July 31, 2002 and the date of the decision.  Plaintiff's first argument is that the ALJ failed to comply with the Appeals Council's order that the ALJ develop the medical record on remand.  (Pl.'s Mem. in Supp. of Mot. for J. on the Pleadings ("Pl.'s Mem.") (Doc. 9) at 2.)  Plaintiff's second argument is that the ALJ did not consider all relevant factors before discrediting Plaintiff due to her failure to obtain treatment for her impairments.  (Id.) This court addresses each argument in turn.

### A.    **ALJ's Noncompliance with the Appeals Council Order**

Plaintiff first contends that the ALJ failed to follow the directive of the Appeals Council upon remand, and that because the ALJ did not comply with the remand order, this court should reverse the ALJ's decision.  The Appeals Council directed that the ALJ "[f]urther develop the medical record" and "obtain additional evidence including, if warranted and available,

-8-

consultative examinations and medical source statements about what [Plintiff] can still do despite the impairments." (Tr. at 126.) Plaintiff contends that she requested a consultative examination on June 18, 2010, and the ALJ denied the request.[5] (Pl.'s Mem. (Doc. 9) at 4.)

However, whether or not the ALJ complied with the remand order is not something this court can review. While an ALJ is undoubtedly bound to follow the directives of an Appeals Council remand order, see 20 C.F.R. § 404.977(b), courts in this district, among others, have found that an Appeals Council remand order "constitutes an intermediate agency action and not the final decision of the Commissioner." See, e.g., Thompson v. Colvin, No. 1:09CV278, 2014 WL 185218, at *4 (M.D.N.C. Jan. 15, 2014) (citing Peckham v. Astrue, 780 F. Supp. 2d 1195, 1203 (D. Kan. 2011); Brown v. Comm'r of Soc. Sec., No. 1:08CV183, 2009 WL 465708, at *5 (W.D. Mich. Feb. 24, 2009) (unpublished); Bass v. Astrue, No. 1:06CV591, 2008 WL 3413299, at *4 (M.D.N.C. Aug. 8, 2008)). But see Scott v. Barnhart, 592 F. Supp. 2d 360, 371-72 (W.D.N.Y. 2009) (holding that the failure of an ALJ to

_____

[5] This court notes that the clear language of the Appeals Council remand order indicates that obtaining a consultative examination, or medical source statements, was within the ALJ's discretion. (Tr. at 126.) However, as explained herein, that fact is not relevant to this court's review of the ALJ's decision.

comply with such an order "constitutes legal error, and necessitates a remand"); Salvati v. Astrue, No. 3:08-CV-494, 2010 WL 546490, at *7 (E.D. Tenn. Feb. 10, 2010) (unpublished).[6] "Because '[t]he Court does not review internal agency-level proceedings,' it lacks the jurisdiction to 'address whether the ALJ complied with specific provisions of the Appeals Council's remand order.'" Thompson, 2014 WL 185218, at *4 (quoting Bass, 2008 WL 3413299, at *4). Therefore, this court will not review an ALJ's decision to determine if it complies with the Appeals Council's order, and any noncompliance with the Appeals Council's remand order is not a ground, in and of itself, for this court to reverse the ALJ's decision.

Plaintiff now argues that the ALJ "did not take any action to further develop the medical record," as "[n]o consultative examination or medical source statement was acquired" and "[t]he ALJ did not call on a medical expert," despite Plaintiff's specific request for a consultative examination. (Pl.'s Mem. (Doc. 9) at 4.) To the extent Plaintiff argues that the ALJ did

---

[6] Plaintiff points this court to an unpublished decision from the Eastern District of Pennsylvania. See Thompson v. Barnhart, No. Civ.A. 05-395, 2006 WL 709795 (E.D. Pa. Mar. 15, 2006). This case, however, is not persuasive for this court, as the ALJ in that case disregarded the remand order from a United States District Court in addition to disregarding the remand order of the Appeals Council. Id. at *11-*12.

not comply with the remand order, Plaintiff does not assert a cognizable issue within this court's power to review, and this court will not address that argument. Nonetheless, this court does have jurisdiction to examine whether the ALJ's noncompliance with the remand order makes it so that the ALJ's conclusions are not "supported by substantial evidence" or were reached through application of an incorrect legal standard - issues this court addresses in the next section. See Hancock, 667 F.3d at 472.

### B. Insufficiency of Medical Information on Remand

Implicit in her argument that the ALJ did not comply with the Appeals Council order, Plaintiff makes the argument that the ALJ's failure to use a consultative examiner or otherwise "develop the medical record" means that the ALJ's determination was not supported by substantial evidence. However in reviewing the ALJ's decision, this court does not agree.

The ALJ's decision provides an extensive review of all evidence relevant to Plaintiff's impairments, including (1) the testimony offered by Plaintiff; (2) treatment notes concerning Plaintiff's poor vision, hearing loss, mental health issues, and shoulder pain; (3) evidence of Plaintiff's wide range of activities of daily living, such as picking up her daughter from

-11-

school and performing house work; and (4) the opinions offered by Dr. Cynthia Powell, Stella Green, State Agency medical consultants, and a State Agency psychological consultant. (Tr. at 14-20.) Based on this evidence, the ALJ found that Plaintiff was not disabled, as Plaintiff could perform sedentary work, although with a number of limitations. (Id. at 14.) This court finds that this evidence and the ALJ's explanation of the same indicates that the ALJ's determination was based on substantial evidence.

This court notes that the ALJ reached a different decision upon remand than the one the ALJ made after the original hearing. However, as referenced earlier, this difference is explained by what the Appeals Council considered to be misplaced weight given by the original ALJ to Dr. Powell's conclusory and unsupported opinion that Plaintiff could not perform sedentary work. (Id. at 116, 125-26.) On remand, the ALJ explained that he accorded Dr. Powell's conclusions "little weight," since (1) Dr. Powell only treated Plaintiff on two separate occasions and (2) Dr. Powell issued her conclusions about Plaintiff's ability more than a full year and a half after the last time Plaintiff visited with Dr. Powell. (Id. at 19.) Additionally, the ALJ explained that the State Agency medical consultants' opinion

-12-

that Plaintiff could perform "medium work" and Plaintiff's "wide range of activities of daily living" all confirmed that Plaintiff could perform at least sedentary work. (Id. at 20.) Therefore, this court finds that the ALJ's determination on remand is supported by substantial evidence, even though it is different from the determination made originally, and this court will not disturb the determination that the ALJ made.

Plaintiff makes the argument that, under Social Security Ruling 83-20, the ALJ should have sought additional medical information regarding Plaintiff's alleged onset date of disability and was required to call a consultative examiner as Plaintiff requested. Plaintiff is correct that, where an ALJ determines that an individual is disabled, he or she must also establish the onset date of the disability, and in some cases, the ALJ must "infer the onset date from the medical and other evidence." Program Policy Statement, Titles II and XVI: Onset of Disability, 1983 WL 31249 (1983) ("SSR 83-20"). In those cases, SSR 83-20 cautions that the ALJ "should," but is not required to, "call on the services of a medical advisor" to assist in determining the onset date. Id. at *3; see also Bailey v. Chater, 68 F.3d 75, 79 (4th Cir. 1995).

Plaintiff cites SSR 83-20 to support her argument that the ALJ was required to call a consultative examiner.  (Pl.'s Mem. (Doc. 9) at 4-5.)  This court disagrees.  In this case, the ALJ made a determination that Plaintiff was not disabled during the relevant time period, rendering the question of onset date entirely unnecessary.  Therefore, SSR 83-20 is not relevant here, and the fact that the ALJ did not call a consultative examiner does not change this court's finding that the ALJ's determination was based on substantial evidence.  The fact that Plaintiff requested a consultative examination also does not change this court's analysis.  The ALJ was under no duty to call a consultative examiner, and in his discretion, he found that a consultative examination was not necessary.

Therefore, because the ALJ's decision was based on substantial evidence, this court does not find any reason to disturb the ALJ's determination based on this issue.

C.  **ALJ's Use of Plaintiff's Lack of Treatment**

Plaintiff's second contention is that the ALJ erred by finding that Plaintiff's subjective statements about her symptoms were not fully credible, in part, due to her lack of

-14-

treatment for the impairments.[7]  Plaintiff argues that the ALJ

was required to consider the Plaintiff's explanations for lack

of treatment - specifically her lack of insurance and the lack

of effective treatment - and that, without considering these

explanations, lack of treatment could not be a reason for the

ALJ to discredit her statements.  (Pl.'s Mem. (Doc. 9) at 6.)

A plaintiff's lack of treatment is one of many factors that

an ALJ may consider in weighing the credibility of a claimant's

statements.  <u>See</u> 20 C.F.R. § 404.1529(c); Social Security Ruling

96-7p, Policy Interpretation Ruling Titles II and XVI:

Evaluation of Symptoms in Disability Claims: Assessing the

Credibility of an Individual's Statements, 1996 WL 374186

(July 2, 1996) ("SSR 96-7p").  SSR 96-7p states that the ALJ

must review the entire record when evaluating a claimant's

---

[7] A finding of noncompliance with treatment may preclude a
finding of disability.  <u>See</u> 20 C.F.R. §§ 404.1530, 416.930;
Program Policy Statement, Titles II and XVI: Failure to Follow
Prescribed Treatment, 1982 WL 31384 (1982) ("SSR-82-59") ("An
individual who would otherwise be found to be under a
disability, but who fails without justifiable cause to follow
treatment . . . cannot by virtue of such 'failure' be found to
be under a disability.").  Here, the ALJ did not deny benefits
based on lack of treatment.  Therefore, SSR 82-59 is not
applicable to this court's analysis.  <u>See</u> <u>Copper v. Astrue</u>, No.
PWG-08-2621, 2010 WL 3294691, at *3 (D. Md. Aug. 19, 2010) ("SSR
82-59 only applies where the ALJ has determined that an
individual's impairments preclude him or her from engaging in
substantial gainful activity, i.e., an individual who would
otherwise be found disabled under the Act.").

statements as to symptoms, including the individual's daily activities, factors that precipitate and aggravate the symptoms, treatment or medication the individual receives or has received for relief of pain or other symptoms, and "any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment." SSR 96-7p, 1996 WL 374186, at *4-9. If the ALJ does not consider the explanations offered by the claimant, the ALJ cannot draw a negative inferences based on the lack of treatment. Id.

Here, the ALJ found that Plaintiff's statements about her symptoms lacked some credibility. The ALJ explained that he found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above [RFC] assessment." (Tr. at 15-16.)

In assessing the credibility of Plaintiff's statements, the ALJ considered many factors. The RFC limitations reflect that the ALJ credited Plaintiff's statements regarding her shoulder, hearing, and vision problems. (See id. at 18.) However, the

ALJ found these conditions were not as disabling as Plaintiff alleged. Plaintiff testified that she "cannot hear normal conversations" and "has no directional hearing," but despite her alleged hearing impairment, Plaintiff had good speech recognition, understood all the directions during a consultative examination, could accurately repeat the physician's questions, and was not a candidate for cochlear implants. (Id. at 15-16.) Additionally, the medical evidence demonstrated that her eyesight was 20/60 bilaterally and that it had improved in 2006, her near-vision was adequate for small print, and her eyesight did not prevent her from driving, watching television, or reading. (Id.) With respect to her shoulder, Plaintiff testified that "she has constant right shoulder pain which causes her to avoid using her right arm," but the record showed: x-rays were negative; she had a normal range of movement and responded well to treatment; she was able to engage in several activities of daily living, including laundry, shopping, and cleaning; and despite alleging she was experiencing excruciating pain, she seldom appeared in distress when receiving medical treatment. (Id. at 15, 17.)

In addition to these observations, the ALJ used Plaintiff's lack of treatment as evidence that Plaintiff's statements lacked

-17-

some credibility.  For instance, the ALJ pointed out that
Plaintiff only had moderate vision loss, as she could drive,
watch television, and read without corrective lenses.  (Id. at
18.)  This court finds that the ALJ merely used the lack of
medical treatment, specifically corrective lenses, as a means of
assessing the severity of Plaintiff's impairment.  That she
could drive without corrective lenses merely shows the level of
vision impairment that Plaintiff has and was not used to
penalize Plaintiff for not receiving treatment for vision loss.
As a result, the ALJ appropriately considered this evidence.

    Plaintiff also points out that the ALJ found that Plaintiff
has "full range of motion in her shoulder and has not sought
medical treatment for her tendonitis since 2007."  (Id.)  In
making this observation, the ALJ provides objective medical
evidence concerning Plaintiff's shoulder along with making the
observation that Plaintiff had not recently received treatment
for her shoulder.  In this sentence, the ALJ bases his
credibility determination on multiple factors, not just
Plaintiff's lack of medical treatment.  In doing so, the ALJ
bases his opinion on the entire record as required by SSR 96-7p.
See SSR 96-7p, 1996 WL 374186, at *1.  Because the ALJ does not
substantially rely on any negative inference one could draw from

Case 1:12-cv-01247-WO-JEP  Document 18  Filed 06/03/15  Page 18 of 21

Plaintiff's lack of treatment in making his determination as to the RFC, this court finds that the ALJ's credibility determination is appropriate.

Furthermore, despite the ALJ's reference to the lack of treatment, the ALJ believed Plaintiff's statements about her limitations, at least to some extent, as he recognized her RFC was limited "to no right upper reaching" based on the residual effects of tendonitis in her shoulder, precluded her "from noisy environments, and work involving use of a telephone" due to her hearing loss, and precluded her from balancing or climbing due to problems that often result from hearing and vision loss. (Tr. at 18.) This further confirms that the ALJ did not rely on an improper inference based on Plaintiff's lack of treatment.

Plaintiff also challenges the ALJ's determination because the decision did not sufficiently explain why the ALJ rejected Plaintiff's explanations for lack of treatment. However, this court finds that the lack of any mention of Plaintiff's proffered explanation in the ALJ's decision does not prove that

-19-

the ALJ did not consider these explanations.[8]

> While the ALJ must evaluate all of the evidence in the case record, the ALJ is not required to comment in the decision on every piece of evidence in the record, and the ALJ's failure to discuss a specific piece of evidence is not an indication that the evidence was not considered.

Brewer v. Astrue, No. 7:07-CV-24-FL, 2008 WL 4682185, at *3 (E.D.N.C. Oct. 21, 2008) (citing Dyer v. Barnhart, 395 F.3d 1206, 1211 (11th Cir. 2005); Black v. Apfel, 143 F.3d 383, 386 (8th Cir. 1998)); see also Brittain v. Sullivan, 956 F.2d 1162 (4th Cir. 1992) (unpublished) ("An ALJ need not comment on all evidence submitted."). The ALJ heard Plaintiff's testimony about her lack of insurance (Tr. at 39), and while the ALJ did not specifically address this reason in his decision, this court finds that the ALJ did not violate SSR 96-7p by not explaining in his decision how he resolved this issue. See Baysden v. Colvin, No. 4:12-CV-303-FL, 2014 WL 1056996, at *7 (E.D.N.C. Mar. 18, 2014) ("Nothing in SSR 96-7p mandates that an ALJ

---

[8] This case is different from Wilkins v. Astrue, a recent case cited by Plaintiff. See Wilkins v. Astrue, Civil No. 3:10-CV-637-MOC-DCK, 2011 WL 6440296 (W.D.N.C. Nov. 22, 2011). In Wilkins, the court found that it was unclear what weight the ALJ placed on the claimant's alleged noncompliance but that the ALJ may have found that the claimant would not be disabled if he complied with treatment. Id. at *5-6. This court has a much clearer explanation of the weight the ALJ accorded to this type of evidence, and this court need not remand for further explanation as the Wilkins court was forced to do.

accept a claimant's explanations or rule out non-compliance or non-treatment as factors weighing against a claimant's credibility simply because explanations are provided.").

In sum, this court finds that the ALJ did not use an incorrect legal standard when the ALJ considered the Plaintiff's lack of treatment.  Furthermore, this court finds that the ALJ's credibility determination is supported by substantial evidence. As a result, there is no basis for disturbing the determination.

IV.  **CONCLUSION**

**IT IS THEREFORE ORDERED** that Plaintiff's Motion for Judgment on the Pleadings (Doc. 8) is **DENIED**, that the Commissioner's Motion for Judgment on the Pleadings (Doc. 12) is **GRANTED**, and that this case is **DISMISSED WITH PREJUDICE.**

A judgment consistent with this Memorandum Opinion and Order will be entered contemporaneously herewith.

This the 3rd day of June, 2015.

_William L. Osteen, Jr._
United States District Judge

-21-